Please support. My name is David Zuckman. I represent appellant Manuel Tiscarena. I'd like to reserve two minutes for rebuttal. Your honors, in this case, there's really no question that Mr. Tiscarena was the one that burned the synagogue. There's no question about that. However, the issue before you is not difficult and it's not complicated. The indictment... Well, it's easy if you follow this court's case law. This court has already said that implied elements must be in the indictment. That's Jackson. So there's no question you've got to have implied elements in there. So the next question is, is substantial effect an implied element? Well, there are two easy answers to that. Lamont first says that based on this court's construction of 844i, churches, synagogues, mosques, temples, what have you, are just ordinarily not places that we associate with interstate commerce. So if they are to be regulated, they have to be regulated because they have a substantial effect on interstate commerce. This is the familiar Lopez analysis. You get three categories that can be regulated under the Interstate Commerce Clause. You get channels. We don't have that. You get instrumentalities. We don't have that. That leaves us with substantial effect. That's what we have. That has to be... That is an implied element under Papadopoulos. And it's not in the indictment. And Mr. Tiscarena-Renteria moved to dismiss the indictment before trial. That's all you need. That is a perfect motion. And this court in United States v. Omer made it clear that when you have an implied element that's not alleged in the indictment, you dismiss if the objection is made. Omer involved a Godden error where materiality wasn't alleged in the indictment. And it's very difficult to see any distinction between materiality being an implied element and a substantial effect on interstate commerce. There's no analytical way that I know of to distinguish the two. And because implied elements must be in the indictment, this court must dismiss. Now, I did raise two other challenges. The other challenge I raised was whether there was sufficient evidence and also a jury instruction challenge. Because the jury instruction challenge, I think, is a bit stronger than the sufficiency challenge, I'll go to that one first. In this case, Mr. Tiscarena asked for a jury instruction where he quoted from Lamont that churches, synagogues, and the like are ordinarily not involved in the stream of commerce. And that is indisputably true. He also asked for a jury instruction that said that the government has to prove the substantial effect. District court rejects both. In that instance, it's a theory of defense instruction. There's no other defense in this case. Like I said in my opening, there's little question who did this. There may be a lot of question as to why, but there's little question as to who did it. The only defense possible in this case was this synagogue didn't have a substantial effect on interstate commerce. And he wasn't allowed to make that argument. I mean, his lawyers tried valiantly in closing to try to make that point. But without the theory of defense instruction, without the jury instruction telling the jurors that you have to find a substantial effect, it really hamstrung his defense. And that was a pretty good defense. It's not just a per se reversal. Hey, he had a shot in the dark chance of getting this one. No, it was a pretty good defense. Recall that the facts of this case are that this arson occurred with two blitz containers of gasoline. The damage was to the stucco, some woodwork. It cost about $6,000 to actually repair the damage. We're talking about flaming over stucco. And the supposed connection to interstate commerce was a three-glass case gift shop that used to be run by Beth Amp. It's very difficult to understand as to how that could be considered having a substantial effect on interstate commerce. Can you just tell me, I don't have all the cases with me. Sure. Is it the case that you rely on or the authority, line of authority, that the extent to which the victim is involved in interstate commerce is a jury question? Well, I mean, the government concedes. They cite in their brief Gomez that says it's just an element. I mean, it's just like another Enrico prosecution. That may go to the indictment. No, it's an element, so it goes to the jury. The substantial. Well, I mean, I don't think there's not a case on point saying a substantial effect goes to the jury, because if that case was, I'm sure this would have just been submitted on the papers. It would be an automatic reversal, and probably the district court doesn't make that decision in the first instance. But the government concedes all over their papers that this is just an ordinary element. Recall, that's the reason they supposedly get out of the indictment challenge. They say, no, no, no, interstate commerce, that's just an ordinary element of the offense. It's a matter of proof. And we track the statutory language. And that's all you need to do, because interstate commerce is an ordinary element of the offense. And then when we get to the jury instruction question, all of a sudden it's a question of law for the court. So Mr. Tiscarena can't challenge it on the front end, and he's not allowed to challenge it during the instructions and during the argument. In other words, the government is just removing the interstate commerce element from this offense. And there's just no constitutional way you can do that. I mean, in light of Apprendi, in light of what the Supreme Court has said, every fact necessary to proving a defendant's guilt must be proven to a jury. The court can't take it away from them. This court can't. Kagan. So you're saying that the government, you are going to dispute how many, what percentage of the people who attended this synagogue came from out of State versus in State? Is that the kind of thing that's supposed to be proven up to a jury? If your honors were my jury, I would show you pictures of the synagogue. It's a small synagogue in La Jolla. And I would say, this synagogue is a place of worship. It's not a place of business. And I think everyone would agree with that. And if this case were prosecuted in State court as an ordinary arson, which it originally was, by the way, you know, they'd get their conviction, and he'd get his time in State court. When you bring it Federal, you don't, there's no just general Federal power to regulate it other than there is for general, you know, intent crimes. There has to be the link to interstate commerce. Well, now, in this indictment, it only alleged the bare minimum. No question about that. Interstate commerce element. Yes. Your complaint is that it did not use the magic word substantial. The magic element. Magic element, substantial. Yes. And you say that that's necessary only because of what was said in Lamont. You wouldn't say that that's necessary to allege substantial in some other interstate commerce case. Or are you saying it's necessary in every case across the board, whether it's a synagogue or a supermarket or a railroad? No, I think this Court's analysis in Lamont was clear, that because of the fact that it is a church, Congress didn't intend it to be regulated under the interstate commerce clause. And if it was a chattel of interstate commerce, if it were consolidated freightways that were in the indictment, were it the Missouri River, were it something that was straddling the border, I don't think there would be an issue. So what you're arguing here is that in the case of a synagogue, specifically, it has to be substantial. And that's the issue that has to be presented to the jury. But in a railroad case, it's just ordinary interstate commerce. Exactly. I have the... What would you do if, suppose it were alleged that three-quarters of the members of this I think that would make no difference whatsoever. I think that the fact... The building itself is the subject matter. It's not who goes there. It's not where they buy things. It's not whether this place places international calls or orders goods from out of state. Lamont clearly holds that the fact that you have patrons from out of state or you use interstate goods is not sufficient by and of itself to make the building part of interstate commerce. I'm into my reserve time. Thank you, Your Honors. May it please the Court. Roger Haynes, representing the government in this case. I think the Court's questions on this last issue, let's turn to that if we can, can be addressed, were addressed in the Gomez case, although the law has changed since Gomez. In Gomez, the Court says right up front, we conclude that the government presented sufficient evidence to satisfy the interstate commerce element. And then they say in the very first section, the district court instructed the jury that, quote, a residential apartment building with multiple rental units is a building in interstate commerce. That's all we're suggesting in this case, that the judge should have instructed the jury that a building used as a gift shop, even a synagogue that is used as a gift shop and a daycare center, is used in interstate commerce. Defense counsel says that's directing a verdict. It is not. It is instructing the jury that as a matter of law, these uses of a building constitute interstate commerce. The jury still finds the element of interstate commerce because they have to find that the building, in fact, was used as a gift shop and daycare center. But once they make that factual finding, it's over. There also will have to be an element that the interstate commerce involved was a gift shop. It turned out that the gift shop's business was $10 a month. Would that be enough to establish or violate the jurisdiction under this statute? Yes, it would, Your Honor. The cases are clear. You don't have to make a profit. Jones said, didn't it, that under this statute, Congress did not exercise its full power over interstate commerce. That's correct. But if this gift shop had been in a corner mall and did only $10 a month in business or even lost money, it would still be in commerce under the case law. This is probably true, but the problem here is that it's in a church or a place of worship. Well, it's a problem, but it's... Yeah. I mean, I don't... You say it's not a problem. It doesn't make any difference. I don't think it is... Or anything else not... I don't think you can discriminate against a gift shop in a synagogue that would be and say it's not in commerce just because it's in a synagogue, whereas it would otherwise be in commerce if it were in a mall. Well, he burned... What burned here? The double doors. There was actually $120,000 worth of damage. To what? Just to the gift shop or... No, no. To the synagogue. The record is not clear how much damage there was to the gift shop, but the shop itself was only 10 to 15 feet away from where the fire was burning. So it was very close to the... That fire to the synagogue. Yes. It was the main doors of the synagogue where the fire was set with a can of gasoline, apparently, and it did substantial damage, and there was smoke damage throughout the entire synagogue. Am I correct as I understood you to say that the amount of interstate commerce done by the gift shop was irrelevant? As long as it... As long... Because my hypothetical of $10 a month, you said it wouldn't make any difference. I only say that because the cases have drawn what I think is an artificial distinction. I like your comment about what if three-quarters of the congregation come from out of state, but the cases seem to suggest that that doesn't matter as long as all we're talking about is spiritual activities. But if we're talking about commercial activities, the cases seem to be quite clear that once a church or synagogue involves itself in commercial activities, it doesn't matter. We're not going to draw distinctions about how small that activity was or even whether it made a profit at all. What bothers me about that is that if the amount involved in interstate commerce is immaterial, it seems to me that it's going to be brought under the statute a large number of places of worship, because it's not so difficult if you have almost any church or synagogue to say, well, yes, they're doing some interstate commerce. You see, they're making available a newspaper that's published out of state, and they're selling it to the members of the congregation, or they're giving it to them. Well, if you want my frank opinion, I think the cases have drawn an artificial distinction. Synagogues and churches are not at all like private residences where there's no commercial activity going on. These kinds of organizations do a lot of commercial activity, and I think what you're finding is that the cases have said, for instance, a church that buys radio station time on three radio stations in town is in commerce. That's the holding of the case. Well, that sounds like spiritual activity to me, but it's also a commercial activity. So I think what you're seeing is a kind of working out of this distinction between spiritual and commercial activities. Do you have any Supreme Court guidance on this? The Jones case itself, but that was a single family residence, so I don't think we do, Your Honor. But let me ask a minute about Lamont, because that's a very recent case. Lamont seems to say that ordinarily, if something is a house of worship, it is not subject to the federal arson statute. All it says is it talks about megachurches that are engaging in all sorts of businesses, and that's something we don't have to reach in this case. Now, no one is claiming that this synagogue was a mega-synagogue that was engaging in all sorts of commercial activities. This has just got a little business going on with this gift shop. It's true, Your Honor, but you see, there must be a sliding scale between megachurch and little gift shop, and I don't know where to draw the line. Frankly, this is why I think it's not a jury question. You can't ask the jury to draw that line. I think it's a legal question for the court to decide, is this enough commerce? Well, it may be a legal question if you're correct that the amount of interstate commerce is irrelevant, but suppose it isn't. Does the court then have to decide that? The judge says, okay, this particular gift shop does so much a month, and I determine that that is or is not a significant impact on interstate commerce? Well, I hate to say it, but I think we're down that road as soon as Jones decided that we were talking about that they were going to draw distinctions and that Congress did not intend to exercise its full interstate commerce power. The question is then for the courts, how far did Congress intend to go? In this case, I should mention we also have the daycare center, which was dealing, I think, in terms of commerce, $3,000 to $5,000 per child per year, so considerable commerce going on there. Was that in the same building? It was not in the same building, but it was this far away. The buildings were this far away, and the statute talks about real property. The indictment in this case talks about the real property being damaged. It was the same complex, and I'm sure Your Honor has children or grandchildren. You know that the primary concern of parents putting their kids in a daycare center is safety, and this firebombing must have had an impact on that daycare center. Well, now, you acknowledge there was a couple things wrong with this trial. First of all, you claim that the court should have, in effect, told the jury that this gift shop, if it was there, constituted a place used in interstate commerce or words to that effect. Yes. But the court didn't do that. That's correct. Then the court instructed the jury on the proposition that if this place used materials that were shipped in interstate commerce, it would constitute interstate commerce or words to that effect, which is precisely what was wrong with the case of the private residence where the person committed the arson. Correct. Now, when you put those two infirmities into this trial that you acknowledge, nobody has really dealt with the interstate aspect of this at all. Well, the jury did find that there was interstate commerce. They found it under an instruction that you concede is wrong. Is wrong. But the facts on which they found that are undisputed. The fact is that the gift shop was used, was in interstate commerce, and the daycare center was interstate commerce. Undisputed facts in a criminal case doesn't get you away from a jury trial on the issue. You can have all kinds of undisputed facts, but that doesn't say you excuse the jury from deciding the issue. Well, I think the question is, would it have made a difference? Would it have made a difference if they'd been properly instructed? We don't know. Yes, we do, because if the jury had been told, if this Court agrees with me, if this Court agrees that the gift shop and the daycare center make this interstate commerce, then the jury should have been told that if you find that the synagogue was operated, that the gift shop and daycare center were used in that facility, then you must find interstate commerce, or you're entitled to find interstate commerce. What is it that has to be in interstate commerce? I'm sorry? What is it that has to be in interstate commerce? The building. The building? The building has to be. Isn't it whatever was burned? No, it can't just be the doors, if that's what you're. No, whatever he set fire to, the building that he set fire to. Our position is that the entire complex has to be used in an activity affecting interstate commerce. If you're going back to the building. Yeah, yeah, I'm troubled, because if this had. . . It just seems incidental that there was a gift shop and a daycare center here. The daycare center is in a different building. The gift shop isn't very big. He sets fire to the doors of the synagogue, which are a powerful religious symbol. We've held that just because a place of worship is not an interstate commerce. Had there been no daycare or gift shop, there wouldn't be any federal case here. I think that's correct. Yeah. I'm not sure. It affects interstate commerce. It certainly powerfully affects it in this case, certainly with the daycare center, I think. Okay. You don't have to burn the place down. You don't have to destroy the place of commerce in order to accomplish your purpose. Thank you. Thank you. Very briefly, Your Honors, we've talked a lot about the gift shop. But you know what I don't see in the indictment? The gift shop. The indictment reads, Congregation Beth-Am. It doesn't say one word about the gift shop. And this Court in DuBose adopted the ratification theory that the petite jury is only allowed to ratify elements found by the grand jury. And if it's not in the indictment, they can't ratify it. Now, we talked a lot about the gift shop. I want to mention that the gift shop used to be run by Beth-Am. They sell just religious wares. It was part of their spiritual mission. This isn't a gift shop selling taffy and gum. It's selling things to be used in the, you know, part of the worship. You know, I'm not here to defend what Mr. Tiscarina did. It was ridiculous. It was bad. It was all those things. But it wasn't a federal case. Let him go to state court. Get his time there. He doesn't belong here. Thank you, Your Honors. Thank you.
judges: Schroeder, Friedman , Leavy